UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUSTY RENDON, an individual, and JOHN
PANARESE, an individual,

                            Plaintiffs,

        - v -

EXTREME NETWORKS, INC.,

                            Defendant.

**ORDER**

22 Civ. 10428 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs Rusty Rendon and John Panarese bring this action against Extreme Networks, Inc. – an online networking infrastructure company – alleging that Defendant's website violates the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"). (Dkt. No. 13)

        Defendant moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. No. 22) For the reasons set forth below, Defendant's motion to dismiss will be granted pursuant to Rule 12(b)(1).

# BACKGROUND[1]

## I.  PARTIES

Plaintiff Rusty Rendon is a resident of the State of California, and Plaintiff John Panarese is a resident of Hauppauge, New York. They are both "blind, visually-impaired, [and] handicapped." (Am. Cmplt. (Dkt. No. 13) ¶¶ 15-16)

Both Rendon and Panarese use Mac computers with VoiceOver screen-reader to access websites on the Internet. (Id. ¶¶ 26, 29) Without the assistance of these technologies, blind and visually impaired persons are unable to fully access websites and the information, products, goods and services they contain and advertise. (Id.)

Defendant Extreme Networks, Inc. "is an online company that owns and operates a website " – https://www.extremenetworks.com – "offering information concerning its products and services, its business and related information." (Id. ¶ 24) The website also offers investment information, including about the Company's financial performance, recent SEC filings, and links to corporate news at https://investor.extremenetworks.com/investor-relations. (Id. ¶¶ 5-6) Defendant is a Delaware corporation with its principal place of business in Morrisville, North Carolina. (Id. ¶ 17)

## II.  FACTS

Plaintiffs allege that Extreme Networks' website is not fully accessible to them as blind and visually-impaired users. (Id. ¶ 25) Due to these access barriers, Plaintiffs are denied equal access to the information and services available on the website. (Id.) Plaintiff Rendon attempted to access the website in August 2022 and encountered multiple access barriers, which

---

[1] Unless otherwise noted, the following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendant's motion to dismiss. See Rotberg v. Jos. A. Bank Clothiers, Inc., 345 F. Supp. 3d 466, 470 (S.D.N.Y. 2018).

he claims prevented him from obtaining full access to information on the website. (Id. ¶¶ 5, 26-27) The Amended Complaint alleges that Rendon was "highly interested" in obtaining information from Extreme Networks' website about its "products and services, information concerning the business itself as an investment opportunity, and related information." (Id. ¶ 28) But Rendon encountered a number of "accessibility issues," including "headings . . . not in numerical order"; "headings . . . labeled as links without heading numbers"; and "[f]rames . . . labeled as 'drift widgets' without descriptions of what those frames held." (Id. ¶ 27) Rendon says that he "remains hopeful that the accessibility barriers will be cured expeditiously, as [he] intends to return to the website in order to obtain information concerning Defendant's business." (Id. ¶ 28)

Plaintiff Panarese attempted to access Defendant's website in October 2022. He "encountered multiple access barriers that denied [him] full and equal access to the information concerning Defendant's products and services, its business and other related information offered to (and made available for) the general public." (Id. ¶ 26) Panarese says that he encountered "the following accessibility issues": "[m]islabeled headings and images"; "[l]inks . . . provid[ing] confusing information and links to other purported information that is unrelated or unhelpful"; and "[o]veruse and misuse of a heading element indicator." (Id. ¶ 30) Panarese alleges that he was "highly interested in obtaining information concerning Defendant's products and services, information concerning the business itself as an investment opportunity, and related information." (Id. ¶ 31) Panarese – like Rendon – "remains hopeful that the accessibility barriers will be cured expeditiously, as [he] intends to return to the website in order to obtain information concerning Defendant's business." (Id. ¶ 31)

3

According to the Amended Complaint, the accessibility issues on Defendant's webpage https://investor.extremenetworks.com/investor-relations include "[m]issing alternative text," [l]inked image missing alternative text," "[e]mpty or missing form labels," "[e]mpty headings," [e]mpty buttons," and "[e]mpty links." (Id. ¶ 32) Plaintiffs allege that if Defendant's website were made accessible, they "would independently navigate to the website and obtain the necessary information to evaluate Defendant's business as an investment opportunity as sighted individuals do." (Id. ¶ 33)

In the Amended Complaint, Plaintiffs describe themselves as "testers" – that is, "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA.]" (Id. ¶ 17 (quoting Harty v. Burlington Coat Factory of Penn., L.L.C., No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011)) In this capacity, they have "filed multiple lawsuits against various operators of commercial websites . . . as part of their advocacy work on behalf of the civil rights of visually-impaired persons." (Id.)

## III.   PROCEDURAL HISTORY

The Complaint was filed on December 9, 2022, and alleges that Extreme Networks' website violates Title III of the ADA and the NYSHRL. (Dkt. No. 1) The Complaint seeks a preliminary and permanent injunction, a declaratory judgment, statutory damages, actual and punitive damages, pre- and post-judgment interest, and an award of attorneys' fees and costs. (Id. at 16) Plaintiffs filed the Amended Complaint on March 17, 2023. (Dkt. No. 13)

On May 12, 2023, Extreme Networks moved to dismiss pursuant to (1) Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, arguing that Plaintiffs lack standing; and (2) Fed. R. Civ. P. 12(b)(6), arguing that the Amended Complaint fails to state a claim. (Def. Br.

(Dkt. No. 22) at 7-12)  Plaintiffs filed their opposition on June 2, 2023 (Pltf. Opp. (Dkt. No. 17)), and Defendant filed a reply on June 23, 2023.  (Def. Reply (Dkt. No. 25))

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Rule 12(b)(1)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction) . . . ." Sinochem Int'l Co. v. Malay Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).  A court considering a Rule 12(b)(1) motion, "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider evidence outside the pleadings," Morrison v. Nat'l Austl. Bank. Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citing Makarova, 201 F.3d at 113), aff'd, 561 U.S. 247 (2010)), including "'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03-CV-597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

B.   **Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 556 U.S. 662, 678 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)). Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679.

A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678 (alteration in original), offers "'a formulaic recitation of the elements of a cause of action,'" id. (internal citations and quotations omitted), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 664.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may

never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II.   WHETHER PLAINTIFFS HAVE ADEQUATELY PLED STANDING

### A.   Applicable Law

"'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)).

To establish constitutional standing, a plaintiff seeking damages "must show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). A "concrete" injury must be . . . "'real,' and not 'abstract,'" Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (quoting Webster's Third New International Dictionary 472 (1971)), and any alleged "particularized" injury "'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560 n.1). "These elements form an 'irreducible constitutional minimum' without which a federal court may not proceed to the merits of a claim." Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411, 417 (2d Cir. 2015) (quoting Lujan, 504 U.S. at 560).

In this Circuit, and in the context of ADA access claims, the "Kreisler factors" are used to determine whether an injury-in-fact is adequately pled. Courts ask whether "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory

7

treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant's [business] to plaintiff's home, that plaintiff intended to return to the subject location." Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187-88 (2d Cir. 2013); Mendez v. Apple Inc., No. 18 Civ. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) (noting that requests for injunctive relief under the NYSHRL are "governed by the same standing requirements as the ADA").

In the context of an ADA website access case, a plaintiff seeking to satisfy the first factor must plead more than "bare boilerplate assertion[s] that [a] [d]efendant failed to comply with the requirements set forth in [the ADA]." Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (internal quotation marks omitted). Plaintiff must instead explain "how the website violated ADA regulations" and "how those alleged violations discriminated against disabled people." Id. The focus of the third factor – intent to return based on past visits – is to ensure that "the risk of harm is sufficiently imminent and substantial" to establish standing. TransUnion, 594 U.S. at 415. For purposes of the third Kreisler factor, it is not sufficient to plead the "magic words" that a plaintiff "intends to return" to the defendant's website. A court must instead consider whether – given "the totality of all relevant facts" that are pled – a plaintiff has plausibly alleged an intent to return that demonstrates "a real and immediate threat of future injury." Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74-75 (2d Cir. 2022) (internal quotation marks omitted).

The Second Circuit's decision in Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68 (2d Cir. 2022) "raised the bar appreciably for adequately pleading standing" in the context of an ADA access case. Hennessy v. Poetica Coffee Inc., No. 21-CV-5063, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (collecting cases).

8

In Calcano, four visually-impaired plaintiffs filed five nearly identical complaints alleging that they were injured by the defendant-stores' failure to carry braille gift cards. Calcano, 36 F.4th at 71-73. In their complaints, plaintiffs stated that they lived near defendants' stores and had been customers "on prior occasions," and that they "intended to immediately purchase at least one store gift card from the [d]efendant[s] as soon as the [d]efendant[s] sell[ ] store gift cards that are accessible to the blind." Id. The Second Circuit found these allegations too vague to support an inference that plaintiffs intended to return to defendants' stores to purchase the gift cards. Id. at 76-77. According to the Circuit, these allegations were not sufficient to "plausibly demonstrate [plaintiffs'] intent to return to [d]efendants' stores if braille gift cards were available." Id. at 75.

The Second Circuit reached a similar result in Harty v. W. Point Realty, Inc., 28 F.4th 435 (2d Cir. 2022). In that case, a wheelchair-bound individual brought an ADA claim alleging that a hotel chain's website he had accessed infringed on his right to travel free of discrimination. The defendant, a hotel chain, maintained a "website with an online reservation system that the public can use to reserve guest accommodations and review information pertaining to the goods, services, and features of the hotel." According to plaintiff, the website did not discuss the hotels' accessibility features "'in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.'" Id. at 440. Plaintiff also pled that, "in the near future[,] he intend[ed] to revisit West Point Realty's website to test it for compliance . . . and possibly to use the website to reserve a guest room at the Holiday Inn Express West Point." Harty v. W. Point Realty, Inc., 28 F.4th 435, 440 (2d Cir. 2022) (emphasis in original).

The Second Circuit concluded that plaintiff had not adequately alleged that he

9

was "using the website to arrange for future travel," and therefore had not shown any concrete harm beyond the statutory violation itself. Id. at 443. And while acknowledging that plaintiff had alleged that "in the near future" he intended to "utilize the website to reserve a guest room," the court found that such "'some-day intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of . . . 'actual or imminent' injury." Id. at 443-44 (quoting Lujan, 504 U.S. at 564).

Finally, in Rendon v. Berry Global, Inc., No. 22-cv-10420, 2023 WL 3724795 (S.D.N.Y. May 30, 2023), another judge in this District considered nearly identical allegations brought by Plaintiffs Rendon and Panarese against another defendant. In Berry Global, Rendon and Panarese alleged ADA claims against a company that "owns and operates a website that offers information about its plastics products and provides investment information." Id. at *1.

In that case, Plaintiff Rendon alleged that

> during his visits to Defendant's website . . . he encountered "multiple access barriers that denied his full and equal access to the information, goods and/or services offered to (and made available for) the general public." Specifically, Rendon alleges that the website had the following accessibility issues, "among other things": (i) the headings were not in numerical order; and (ii) there were many mislabeled images. Rendon alleges that he was "highly interested in investing in Defendant and learning [sic] regarding the products offered by Defendant." He further alleges that he "intends to return to the website to transact business there as soon as the accessibility barriers are cured."

Id. (quoting complaint) Plaintiff Panerese asserted similar allegations. Id. at *2.

In granting defendant's motion to dismiss, the court found that the "factual allegations in the Complaint before the court are insufficient to confer standing." Id. at *4. In so holding, the court noted that the complaint

> do[es] not include any detail about [p]laintiffs' past visits to [d]efendant's website or the frequency of such visits, specify what in particular they were hoping to learn by visiting [d]efendant's website, explain how the accessibility barriers prevented them from accomplishing their goals on the website, [or] explain why [plaintiffs] became interested in potentially "investing" in [d]efendant in the first place. . . . Nor does the Complaint

10

> explain why [p]laintiffs wish to return to the website as soon as the barriers are lifted, or specify when they plan to return to [d]efendant's website. Therefore, [p]laintiffs here – as in Calcano – have also not provided the basic information needed to demonstrate that they suffered a "concrete and particularized" injury.

Id.

## B. Analysis

In moving to dismiss, Defendant contends that Plaintiffs' allegations regarding their intent to return to Defendant's website simply parrot legal conclusions, and are devoid of the facts necessary to plead a plausible injury-in-fact. (Def. Br. (Dkt. No. 22) at 10-15)

In the Amended Complaint, Rendon and Panarese allege that they "browsed Defendant's website" in August 2022 and October 2022 respectively, to "obtain information regarding Defendant's products and services, its business, and other related information[,] and encountered active barriers." (Am. Cmplt. (Dkt. No. 13) ¶¶ 5-6) For Rendon, the alleged accessibility barriers included "headings . . . not in numeral order," "headings . . . labeled as links without heading numbers," and "[f]rames . . . labeled as 'drift widgets' without descriptions of what those frames held." (Id. ¶ 5) For Panarese, the accessibility barriers included "[m]islabeled headings and images on the main page," "[l]inks on multiple pages provid[ing] confusing information," and "[o]veruse and misuse of a heading element indicator." (Id. ¶ 6) Plaintiffs both allege that "[i]f the website were accessible, [they] would be able to independently obtain information concerning Defendant's products and services, its business and other related matters." (Id. ¶ 36) As to intent to return, Rendon and Panarese say that they "remain[] hopeful that the accessibility barriers will be cured expeditiously, as [they] intend[] to return to the website in order to obtain information concerning Defendant's business." (Id. ¶¶ 28, 31)

### 1. Injury-in-Fact

Under Kreisler, these allegations are not sufficient to show a concrete and

particularized past injury.  Plaintiffs do not specify "what in particular they were hoping to learn by visiting Defendant's website[,] . . . how the accessibility barriers prevented them from accomplishing their goals on the website, [or] why [Plaintiffs] became interested in potentially 'investing' in Defendant in the first place."  Berry Global, 2023 WL 3724795, at *4.  Merely encountering barriers on a website is not a "concrete" or "particularized' injury – a plaintiff must show a harm beyond the statutory violation itself.  See Harty, 28 F.4th at 443 (finding no injury-in-fact where ADA tester alleged that a hotel website did not comply with the ADA but "asserted no plans to visit [the hotel] or the surrounding area [and did] []not allege that his ability to travel was hampered by [the hotel's] website in a way that caused him concrete harm")

    Plaintiffs have also not pled facts that plausibly demonstrate an intent to return to Defendant's website.  Plaintiffs vaguely allege – as they did in Berry Global – that they "intend[] to return to the website in order to obtain information concerning Defendant's business there as soon as the accessibility barriers are cured."  (Am. Cmplt. (Dkt. No. 13) ¶¶ 28, 31)  But as in Berry Global, the Amended Complaint here "does not include . . . detail about Plaintiffs' past visits to Defendant's website or the frequency of such visits," Berry Global, 2023 WL 3724795 at *4, beyond mentioning each Plaintiff's single visit in August 2022 and October 2022.  (Am. Cmplt. (Dkt. No. 13) ¶¶ 5-6)  "[N]or does the Complaint explain why Plaintiffs wish to return to the website as soon as the barriers are lifted, or specify when they plan to return to Defendant's website."  Berry Global, 2023 WL 3724795 at *4.  The mere "profession of an intent to return to the places" previously visited is "not enough" to establish standing.  Lujan, 504 U.S. at 564 (internal quotations omitted); Harty, 28 F.4th at 443 ("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that Article III requires.")

2. **<u>Dignitary Injury</u>**

Plaintiffs argue that they have suffered a "dignitary injury" which constitutes an injury-in-fact sufficient to confer standing. (Pltf. Opp. (Dkt. No. 17) at 3-5) In this context, a "dignitary injury" generally means a stigmatic injury, suffered by a disabled individual from the mere fact of discrimination. <u>Id.</u> (quoting <u>Shaver v. Indep. Stave Co.</u>, 350 F.3d 716, 724 (8th Cir. 2003) ("[T]he mere fact of discrimination offends the dignitary interest that the statutes are designed to protect. . . .")) Plaintiffs argue that, in enacting the ADA, Congress intended to protect a "disabled person's dignitary interest," and thus an "ADA violation, by definition, implicates a disabled individual's dignitary interest" such that showing "additional harm is unnecessary" for purposes of conferring standing. <u>Id.</u> (citing <u>Griffin v. Dep't of Lab. Fed. Credit Union</u>, 912 F.3d 649 (4th Cir. 2019); <u>Spokeo</u>, 578 U.S. at 342).

In <u>Griffin</u>, 912 F.3d at 653, a blind plaintiff alleged a dignitary harm premised on his inability to access a credit union's website due to the absence of "alternative text," "redundant links," and missing "form labels." The Fourth Circuit stated that "dignitary harms are readily inferred by allegations of unequal treatment," and that "Congress, in enacting the ADA, intended in part to protect people with disabilities against stigmatic injury." <u>Id.</u> at 654. The court also noted that "dignitary harms . . . may be sufficiently concrete to constitute injury in fact[,] . . . [b]ut not all dignitary harms are sufficiently concrete to serve as injuries in fact." <u>Id.</u> at 653-54. Indeed, in <u>Griffin</u>, the court concluded that the dignitary harm alleged by the blind plaintiff did not suffice to confer Article III standing, because plaintiff was not eligible to receive the credit union's services in the first place, because he did not meet the requirements for credit union membership. Accordingly, he could not be "personally subject" to the alleged stigma and discrimination. <u>Id.</u>

In any event, in Spokeo the Supreme Court ruled that a plaintiff claiming an injury derived from a statutory violation must link that violation to a "concrete and particularized" harm beyond a "bare procedural violation." Spokeo, 578 U.S. at 341-43. As discussed above, Plaintiffs have not pled a concrete harm beyond the alleged statutory ADA violation, and thus their claims of a dignitary injury are not sufficient to demonstrate Article III standing.

### 3. Informational Injury

The Amended Complaint alleges that Plaintiffs were "denied equal access to [Defendant's] website and the information concerning Defendant's products and services, its business and other related information offered thereon." (Am. Cmplt. (Dkt. No. 13) ¶ 25)

To plead an informational injury under Article III, a plaintiff must allege the "deprivation of information to which he is entitled under the ADA, [as well as] 'downstream consequences from failing to receive the required information.'" Harty, 28 F.4th at 444 (quoting TransUnion, 594 U.S. at 442).

Here, Plaintiffs do not describe with specificity the information they sought, other than "information pertaining to the company's financial performance, recent SEC filings and links to corporate news." (Am. Cmplt. (Dkt. No. 13) ¶ 7) Nor have Plaintiffs pled facts showing "downstream consequences" from their alleged failure to obtain the requisite information. As in Berry Global – a case brought by the same Plaintiffs that pleads nearly identical factual allegations against the operator of a different website – Plaintiffs do not allege with any specificity how the deprivation of this information "impacted their decision whether or not to buy stock," nor "what downstream injury they suffered" due to their inability to access financial performance and SEC information. Berry Global, 2023 WL 3724795, at *4. Accordingly,

Plaintiffs' alleged "informational injury" does not suffice to establish Article III standing. Harty, 28 F.4th at 444.

### 4. The Relevance of Plaintiffs' Litigation History

Since 2019, Plaintiffs have filed more than three hundred ADA website access actions across the country. Plaintiff Rendon has filed more than a dozen such lawsuits in New York, while Plaintiff Panarese has filed more than forty in New York. (Def. Br. (Dkt. No. 22) at 13) Plaintiffs' complaints in these lawsuits are substantially similar, with the primary differences relating to the particular website at issue and the products or services offered by the various defendants. (Id.)

While the Amended Complaint identifies Plaintiffs as ADA "testers," that fact is not, of course, dispositive of whether Plaintiffs have standing. See Davis v. Wild Friend Foods, Inc., No. 22-cv-04244 (LJL), 2023 WL 4364465, at *4 (S.D.N.Y. July 5, 2023) ("[T]he fact that the [p]laintiff . . . may be an ADA tester is not dispositive.") As the Harty court explains, "testers can have standing, but even testers have to show that they have suffered an Article III injury in fact." Harty, 28 F.4th at 444 n.3; see also Griffin, 912 F.3d at 656 ("Griffin points to his status as an ADA tester. It is true that tester status does not destroy standing. But by the same token it cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow Griffin to avail himself of its services.").

In Calcano, the Second Circuit cited plaintiffs' history of filing "eighty-one of over 200 essentially carbon-copy complaints . . . us[ing] identical language to state the same conclusory allegations." Calcano, 36 F.4th at 76-77. The court found that "[t]his backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury. . . . '[J]udicial experience and common sense' suggest that the errors, oddities, and

omissions in the complaints are a result of their mass production, and they render each Plaintiff's cookie-cutter assertion of standing implausible." Id. (quoting Iqbal, 556 U.S. at 679)

Similarly, the Berry Global court found that these same Plaintiffs' extensive history of filing similar ADA website actions throughout the country "only serves to underscore the implausibility of Plaintiffs' claims," which "contain the same cut-and-paste and fill-in-the-blank allegations." Berry Global, 2023 WL 3724795 at *6 (internal quotations omitted).

Here, the Amended Complaint contains "errors and oddities" that reveal the "cut-and-paste nature" of Plaintiffs' allegations. For example, in preparing the Amended Complaint, Plaintiffs forgot to change the name of the Defendant; in alleging the accessibility issues presented by Defendant's webpage, the Amended Complaint states that these issues inhibit "visually-impaired potential Supernus customers or investors . . . [from] determine[ing] what is on the website, brows[ing] the site, and determin[ing] whether or not to access further information concerning Defendant's products, business, and related materials." (Am. Cmplt. (Dkt. No. 13) ¶ 32 (emphasis added)) These "errors and oddities" reveal the "mass production" nature of Plaintiffs' allegations, and "render each Plaintiff's cookie-cutter assertion of standing implausible." Calcano, 36 F.4th at 77. "[I]n their haste to file more lawsuits, [Plaintiffs have failed] to submit a complaint with allegations that are coherent and detailed enough to 'nudge their claims 'across the line from conceivable to plausible.'"" Sookul v. Fresh Clean Threads, Inc., No. 1:23-cv-10164 (GHW), 2024 WL 4499206, at *4 (S.D.N.Y. Oct. 16, 2024) (quoting Calcano, 36 F.4th at 76; Iqbal, 556 U.S. at 680).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 21).

Any motion for leave to amend is to be filed by **April 11, 2025**. The proposed Second Amended Complaint is to be attached as an exhibit to the motion. If no such motion is filed by April 11, 2025, this Court will direct the Clerk of Court to close this case.

Dated: New York, New York
March 31, 2025

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge